**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHARNECA REID**<br><br>*Plaintiff*,<br>v.<br><br>**PIEDMONT AIRLINES**<br>**8500 Essington Ave.**<br>**Philadelphia, PA 19153**<br><br>***And***<br><br>**CHRISTIAN GARCIA**<br>**8500 Essington Ave.**<br>**Philadelphia, PA 19153**<br><br>***Defendants.*** | **CIVIL ACTION**<br><br>**No. 26-8645** |

**COMPLAINT**

Plaintiff Sharneca Reid, through her attorneys, van der Veen, Hartshorn & Levin, hereby files this Complaint against Defendants Piedmont Airlines and Christian Garcia pursuant to Title VII, 42 U.S.C. § 2000(e), *et seq*., and the Pennsylvania Human Relations Act, 42 P.S. §951, *et seq*.

**PARTIES**

1. Plaintiff Sharneca Reid ("Plaintiff" or "Reid") is and was at all relevant times an adult residing in Philadelphia, Pennsylvania.

2. Defendant Piedmont Airlines, Inc. ("Piedmont"), upon information and belief, is a Maryland Corporation, having at all times relevant hereto substantial operations in Pennsylvania.

3. Defendant Christian Garcia (hereinafter, "Garcia") is an adult individual residing within the Eastern District of Pennsylvania, who at all relevant times hereto was employed by Piedmont.

4. At all times relevant hereto, Plaintiff was employed by Piedmont, specifically in a managerial position with a principal place of business at the Philadelphia International Airport.

**JURISDICTION AND VENUE**

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1965, as codified, 42 U.S.C. § 2000e to 2000e-17. Jurisdiction is founded on 28 U.S.C. § 1331.

6. Jurisdiction lies over state law claims based on the principals of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

7. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) given that a substantial portion of the events or omissions giving rise to the claim occurred within the boundaries of the Eastern District of Pennsylvania.

**FACTUAL BACKGROUND AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. Plaintiff Sharneca Reid began working for Piedmont Airlines in January 2024 as a Ramp Agent. In or around August 2024, Plaintiff was promoted to a managerial position.

9. Shortly after receiving her promotion, Plaintiff began to experience significant issues with her supervisor, Christian Garcia.

10. On or about September 23, 2025, Garcia began inappropriately touching Plaintiff while the two were in a work vehicle with another employee. Garcia rubbed Plaintiff's upper thighs and attempted to touch her breasts. The other employee, who was seated in the back seat of the vehicle at the time, witnessed these events.

11. Plaintiff was informed by the other employee present in the vehicle on September 23, 2025 that he filed a complaint with human resources regarding the incident, but Plaintiff was never contacted for an interview or statement.

12. Garcia's advances continued in early October 2025, when he attempted to kiss Plaintiff near the manager's conference room at the Philadelphia Airport.

13. Plaintiff questioned Garcia's behavior and referenced the presence of cameras, but Garcia responded that "those cameras don't work" and stated, "this is how I got my wife," before making contact with her lips. Plaintiff physically pushed Garcia away.

14. Plaintiff was subsequently transferred to the "ABR" department, but that did not stop Garcia's advances. Garcia repeated this same course of conduct in late October 2025, when he attempted to kiss Plaintiff again at Gate F23, but Plaintiff was able to avoid this contact.

15. The final incident occurred in early December 2025, when Garcia drove to Plaintiff's department and approached her while she was alone in the office, once again making sexual advances. Plaintiff advised Garcia in no uncertain terms that she did not like his advances, he was making her uncomfortable, and this needed to stop.

16. Shortly after Plaintiff rejected his advances, Garcia was reassigned to her new department and resumed a supervisory role over her. Garcia's behavior toward Plaintiff from that point forward became hostile and retaliatory in nature. He would scrutinize her work, attempt to discipline her, and target her for criticism.

17. Plaintiff finally reported Garcia to human resources herself on December 12, 2025, resulting in *both* Plaintiff and Garcia being suspended. However, Garcia was permitted to come back to work two weeks prior to Plaintiff.

18. Plaintiff also learned that while human resources was supposedly conducting an investigation, Garcia's manager was soliciting statements from Plaintiff's co-workers aimed at discrediting her, rather than reasonably investigating the allegations.

19. On December 26, 2025, Plaintiff was informed that human resources deemed her complaint "unsubstantiated" without any further explanation.

20. Plaintiff was asked whether she felt comfortable continuing to work with Garcia under the circumstances, to which she responded that she was not given his pattern of escalating behavior. As a result, Plaintiff was given the option to transfer departments and work at "the Ramp," and she accepted.

21. Plaintiff was grateful for the transfer, but understood that the Ramp could be a more physically demanding assignment, which presented an issue because she was pregnant.

22. Plaintiff received documentation from her medical provider that she required breaks, time to eat, and consideration in assignments for her pregnancy and related limitations. Plaintiff provided this documentation to Piedmont.

23. Despite this, Plaintiff's on-duty managers acted oblivious to these accommodations, informing Plaintiff that she would have to provide them with emails confirming her accommodation or explain her limitations personally.

24. Plaintiff's on-duty managers would also regularly assign her physically demanding tasks, even after she believed her accommodation had been solidified.

25. Plaintiff further learned that despite her request to be separated from Garcia, he would at times be assigned to the Ramp as a supervisor and she would be forced to work under him.

26. On June 8, 2026, Plaintiff arrived to work and learned that not only was she given a physically demanding assignment, but she would also be under the supervision of Garcia.

27. Plaintiff approached Garcia and asked to be reassigned to a different zone due to her physical limitations caused by her pregnancy.

28. Garcia refused to accommodate Plaintiff's request, after berating her about how her accommodation did not specifically say that she could not be assigned to the zone in question.

29. Plaintiff experienced several other tense interactions with Garcia that day, including him refusing to respond to her attempts to reach him regarding work matters.

30. Throughout her shift, Plaintiff began to feel ill and needed to leave. Plaintiff subsequently called out citing FMLA and left.

31. Piedmont alleged that Plaintiff did not notify anyone before leaving on June 8, 2026. However, as previously mentioned, Garcia was being unresponsive to Plaintiff despite her attempts to reach him. Plaintiff attempted to reach Garcia regarding her request to go home through a radio transmission, and several other managers acknowledged hearing Plaintiff's radio transmission.

32. Plaintiff was subsequently terminated for this alleged violation.

33. Upon information and belief, Plaintiff was terminated as retaliation for her complaints against Garcia.

34. Plaintiff filed a Charge with the Equal Employment Commission, and by extension the Pennsylvania Human Relations Commission, on May 15, 2026.

35. A Right to Sue Notice was issued with respect to this charge on September 1, 2026.

36. Plaintiff filed a second Charge with the Equal Employment Commission, and by extension the Pennsylvania Human Relations Commission, on September 11, 2026. This additional charge was filed to include a charge for retaliation related to Plaintiff's termination.

37. Plaintiff received a notice of closure with intent to issue a Right to Sue Notice on November 12, 2026.

**COUNT ONE**
**TITLE VII, 42 U.S.C. § 2000e-2(a)**
**SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT**
**Plaintiff v. Piedmont**

38. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

39. At all relevant times, Plaintiff was an employee of Piedmont, as defined by 42 U.S.C. §2000e(f).

40. Plaintiff, as a female employee, was a member of a protected class.

41. Plaintiff was repeatedly subject to unwanted sexual advances by a management-level employee, Christian Garcia.

42. Upon information and belief, Garcia's inappropriate behavior toward Plaintiff was reported to human resources not long after the September 2025 incident by another employee-witness.

43. Plaintiff further directly advised Piedmont of Garcia's unwanted advances, and Piedmont not only failed to take any reasonable measures to remove Garcia from the workplace, but also continued to allow Garcia to act as her supervisor.

44. As a direct and proximate cause of Piedmont's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

**COUNT TWO**
**TITLE VII, 42 U.S.C. § 2000e-2(a)**
**RETALIATION**
**Plaintiff v. Piedmont**

45. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

46. At all relevant times, Plaintiff was an employee of Piedmont, as defined by 42 U.S.C. §2000e(f).

47. Plaintiff, as a female employee, was a member of a protected class.

48. Plaintiff was repeatedly subject to unwanted sexual advances by a management-level employee, Garcia.

49. Plaintiff reported this conduct to Piedmont in good faith in December 2025.

50. Plaintiff was suspended after making her report, under the guise of investigation, despite the fact that she was suspended for a longer time than Garcia.

51. After Plaintiff returned to work, Piedmont failed to take any reasonable measures to ensure that Plaintiff was separated from Garcia, and he was not assigned as her supervisor. This caused her severe mental anguish and distress.

52. Plaintiff was ultimately terminated for conduct that allegedly occurred on June 8, 2026, while she was under the supervision and management of Garcia.

53. Upon information and belief, Piedmont terminated Plaintiff based on representations made by Garcia, in retaliation for her good faith report of sexual harassment in December 2025.

54. As a direct and proximate cause of Piedmont's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

## COUNT THREE
## PENNSYLVANIA HUMAN RELATIONS ACT
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
## Plaintiff v. Piedmont

55. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

56. Plaintiff, as a female employee, was a member of a protected class.

57. Plaintiff was repeatedly subject to unwanted sexual advances by a management-level employee, Christian Garcia.

58. Upon information and belief, Garcia's inappropriate behavior toward Plaintiff was reported to human resources not long after the September 2025 incident by another employee-witness.

59. Plaintiff further directly advised Piedmont of Garcia's unwanted advances, and Piedmont not only failed to take any reasonable measures to remove Garcia from the workplace, but also continued to allow Garcia to act as her supervisor.

60. As a direct and proximate cause of Piedmont's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

**COUNT FOUR**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**RETALIATION**
**Plaintiff v. Piedmont**

61. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

62. Plaintiff, as a female employee, was a member of a protected class.

63. Plaintiff was repeatedly subject to unwanted sexual advances by a management-level employee, Garcia.

64. Plaintiff reported this conduct to Piedmont in good faith in December 2025.

65. Plaintiff was suspended after making her report, under the guise of investigation, despite the fact that she was suspended for a longer time than Garcia.

66. After Plaintiff returned to work, Piedmont failed to take any reasonable measures to ensure that Plaintiff was separated from Garcia, and he was not assigned as her supervisor. This caused her severe mental anguish and distress.

67. Plaintiff was ultimately terminated for conduct that allegedly occurred on June 8, 2026, while she was under the supervision and management of Garcia.

68. Upon information and belief, Piedmont terminated Plaintiff based on representations made by Garcia, in retaliation for her good faith report of sexual harassment in December 2025.

69. Plaintiff was also pregnant at the time of her termination, for which she sought reasonable accommodation from her employer.

70. Plaintiff believes and therefore avers that Plaintiff's pregnancy may have also been a contributing factor in her termination, along with her December 2025 complaints against Garcia.

71. As a direct and proximate cause of Piedmont's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

**COUNT FIVE**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**AIDING AND ABETTING**
**Plaintiff v. Garcia**

72. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

73. The Pennsylvania Human Relations Act, Section 955(e), provides that it shall be an unlawful discriminatory practice for any person or employee to aid, abet, incite, compel or coerce the doing of any act declared an unlawful discriminatory practice by the Act.

74. Defendant Garcia was at all relevant times herein an employee of Piedmont, specifically a supervisor with management-level authority over Plaintiff.

75. Defendant Garcia abused his position of power over Plaintiff by engaging in a pattern of actions constituting sexual harassment.

76. After Plaintiff initiated a complaint against him, Defendant Garcia continued to retaliate against Plaintiff when he would be assigned as her supervisor, refusing to communicate with her, assigning her unreasonable roles in light of her pregnancy accommodation, and otherwise refusing to work with her in the same manner he worked with the other individuals being supervised.

77. Upon information and belief, Plaintiff was terminated based on false, misleading, and/or material misrepresentations and/or omissions made by Defendant Garcia regarding what occurred on June 8, 2026.

78. As a direct and proximate cause of Defendant Garcia's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

1. Enter judgment in favor of Plaintiff and against Defendants for violation of her rights under Title VII and the PHRA;

2. Declare that the actions of Defendants constituted unlawful discrimination;

3. Award Plaintiff compensatory damages, including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate her for her losses, and damages for emotional distress;

4. Award Plaintiff punitive damages for Defendant's violations of Title VII not only for the egregious nature of the wrong Piedmont did to Plaintiff, but additionally to deter Piedmont from such imperious conduct in the future in such amount as the Court deems proper;

5. Award Plaintiff her costs, attorneys' fees, and non-taxable expenses in this action; and

6. Grant Plaintiff such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully Submitted,

Date: November 12, 2026 By: */s/ Kaitlin C. McCaffrey*____________________

Kaitlin C. McCaffrey
I.D. No. 329960
Attorney for Plaintiff
1219 Spruce Street
Philadelphia, PA 19107
P: (215) 546-1000
F: (215) 546-8529
E: kmccaffrey@mtvlaw.com